Good afternoon, Illinois Appellate Court. First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding. Case number 21-0265, Board of Managers of Roseglen Condominium Association v. Harleysville Lake States Insurance. Good afternoon. I'm Justice Michael B. Hyman. With me is Justice Aurelia Buczewski and Justice Carl Anthony Walker. We're going to proceed as we would in the courtroom. We will interrupt you probably, and if you would finish your point and then go on and answer our questions, we'd appreciate it. The appellant, both sides have 20 minutes. Appellant, tell me how many minutes you want to reserve for rebuttal. And if you would each of them right now introduce yourselves, appreciate it. Okay. Thank you very much, Justice Hyman. This is Christopher Gallinari for the appellant. Is it that we need to reserve a portion of our 20 minutes for rebuttal? It was my understanding by the Supreme Court rules that ordinarily there's 20 minutes for each side plus 10 minutes for rebuttal. Not here. Okay. We would like to reserve five minutes for rebuttal. Okay. I'll tell both of you, we don't have a buzzer. We don't have a stopwatch. So, you know, don't worry about it. You'll have your five minutes, okay? I want you to look at the clock and start thinking, oh my gosh. I've got a buzzer at four and a half minutes, Your Honor. Okay. Good afternoon. My name is Neil Novak. I'm here on behalf of the defendant appellee, Harleysville Lake States Insurance Company. Okay. Thank you very much. You may proceed. Thank you very much, Your Honors. May it please the court. By October 2nd, 2009, Harleysville had received the association's 2009 complaint. And on December 4th, it sent Kirk a We know the facts. So, we've read the briefs. Let me ask you what I think is really a key question. You make a lot of arguments, okay? There's several arguments you make as to why this should be reversed. Give me which of those arguments you make. What are your two best arguments? I mean, you know, I think you may be, like them all, I understand it, but some may not as good as others, okay? What are their best arguments to convince us to reverse? I'll let you have two. All right. On the possibility of coverage, there is a distinction in the policies themselves between course of operations, coverage, and completed coverage. And there is also a work performed on the insurer's behalf by subcontractors. Here, we don't have course of operations work or course of operations occurrence. We have completed operations coverage. Here, we don't have the association suing for Kirk's own work. We're suing for completed operations and property damage, actual physical injury to property, to work of subcontractors or caused by subcontractors' work. I think that if you go to the Supreme Court decision in brochure, the Supreme Court says, under the general coverage part, initially coverage exists, but then the Supreme Court under brochure looks to the exclusions. So, I think if you look to Supreme Court reasoning in brochure, go to the general coverage language where the Supreme Court in brochure says for defective construction, there is going to be initial coverage, and then look to see whether there are exclusions that say not for this kind of property damage. And I think that if you go through the reasoning that the Supreme Court did in brochure, the same reasoning that Supreme Court did under different facts in Elger, you will be attuned to look to the general coverage part, occurrence, and property damage, very general definitions. And then, are there any exclusions that don't apply here? And our position is that if you go through the policies, you will see there's general coverage, but then exclusions that knock out certain kinds of property damage, but not the property damage here. So, I like the reasoning of brochure. I like the fact that there is a distinction between course of operations and completed operations. I like the fact that there's a distinction between, especially in the case of completed work, between the insurance work and subcontractor work. On the estoppel issue, I don't know if Your Honor and the other focus on the estoppel argument. I want you to focus, again, I want you to focus on the two arguments that you think are your real winners here. Okay. And I think that the two cases that we cite to under the rule of Elko, the Davis case and the other case that talk about what happens if the insurer issues a disclaimer of coverage before a lawsuit is filed? Well, the two cases that we cite to in our brief and that we cited to again in our reply brief, Davis and Pope, they answer that question. The argument by the insurer seems to be that even though the insurer has previously made a disclaimer of coverage, once a lawsuit is filed, that doesn't mean that there is a reboot and the insurer then has to go through all of its notification arguments all over again. Davis and Pope answer that question, no, there's no reboot. Once you've materially breached the insurance contract, the insurer is not then required to continue to do what would be deemed a useless or a pointless act after the insurer has already disclaimed coverage. So they've got two options. File a declaratory judgment of no coverage. They didn't do that. Defend under a reservation of rights. They didn't do that. Under Elko and under Davis and under Pope, that's the only thing that they have left. Once they put all of their eggs into the one basket of their unilateral determination that there is no possibility of coverage, that's all they get to argue. But as we argue in our brief and as I've shortcutted this afternoon before your honor, there is a possibility of coverage because we're not talking about course of operations. We're not talking about a wall collapse like in Metro Builders or in Viking. We're talking about completed operations coverage. We're not talking about... Mr. Guillenaro, what they are arguing though is that we're talking about defective work. Yes, you are. Talking about defective work. There's no coverage for that. That's what Mr. Novak is arguing. That's his argument. But the only place that you would find that is in some Illinois appellate court case. I think it's very telling that the circuit court... Isn't that what Elko was all about also? No, Elko is on the estoppel side of the argument, your honor. I think Brochu is a good place to to the extent that the association asks us to reverse first district appellate court authority, we decline to do so. And I think that's very telling. But that's the issue I'm getting to is that estoppel is not applied if you can show that there's no coverage. So when there's defective work, there is no coverage because that's what Elko did not apply estoppel. And estoppel would not be applied if there's no coverage. And if the issue is defective work, because there is coverage if there's damage to other parts of the property, or if there's some sort of negligence involved. But where there's just simply defective work, that's the argument they're making is that there's no coverage. So I'll give you a chance... That's the argument that they're making. That's correct, your honor. But I think that if you say defective work clearly falls within the definition of property damage, then you must look to see whether there is an exclusion that excludes the kind of property damage that the claimant is seeking coverage for. And in the policy at issue in Brochu, it was a broader exclusion for your work. It was any work that you did, or that was done on your behalf, regardless of whether it was during the course of operations or completed operations. So Brochu said, certainly under the initial coverage part, under what is meant by property damage, and then by implication, what is meant by occurrence, because it was an occurrence policy. Initially, there's going to be coverage, but then you must look to see whether the exclusions take it out of coverage. And what we are arguing in our brief is that years ago, there were broader exclusions from coverage that did apply to all defective work, but that don't apply here because the exclusions have been narrowed over time. And the exclusions in these policies don't exclude an occurrence causing property damage for completed operations and work done by subcontractors or contractors. Even with those two arguments, the law in Illinois requires there to be some kind of notice with regard to that second lawsuit. And as we know, it's been conceded that the insurance company never received notice of the 2011 complaint. So why does your honor say that law requires notice of the second lawsuit? Because I don't believe that's the case when insurers disclaim coverage. No, no, no, no. But that's the issue you're doing is you are saying that the 2009 complaint equals the 2011 complaint. Am I correct? You're saying they're all part of the same action? Same claim, same allegations. Yes. They have to be related. I mean, like a glove in the hand. Okay. They are one in the same. If they're separate, then your argument is awful. So in order for us to rule in your favor, you have to somehow get what happened with regard to the 2009 complaint has to apply to the 2011 complaint, correct? In some way. I don't know what you mean by it has to apply. I do agree. I will concede that the two actions need to be for the same claim. Because if you conclude, if you're sitting there as the insurer and you make the unilateral determination that there's no possibility for coverage on these allegations, right? And then you're insured brings another lawsuit later on, on different allegations where there may or may not be a possibility of coverage, but you have not had the opportunity to make your decision with respect to those allegations. I can see that that might be a different case that might give rise to a different decision, but that's not the case here. They concede in their brief, the appellate court has conceded. It's the same cause of action. No, it does. Whether it's a name cause of action or not, it's not the issue. The issue is when the dismissal, voluntary dismissal and a refiling, right? That's what happened here. And under the statute, this is not a question of facts. It's a question of law. And the Illinois law under the statute states section 13217 is that it's an entirely new action. And that has been stated by the Supreme court at least a dozen times, okay? It goes back years. It's a new act. And it even uses the word new action in the statute. Right. And so if, so one, it's a new action and a new action means it's a separate action, even if it's related in the facts. And secondly, that it may not be true related effects because you made different arguments in the prior appellate court, where you said that this, the second case is different than the first case. And one of the reasons why you could proceed with the second case. So the facts that there are similarities between the cases, the fact is they are separate cases. And my understanding of the law, and you give me the case that says otherwise, cause I can't find it. The case that says that the refiling is considered something other than a new case. And if it's a new case, it requires notice and no notice was given. That's the argument Mr. Novak's making. End of story. All right. Well, I will, I will direct your honor's attention to Davis and Pope. They're not directly on point factually, because what we have in Davis and Pope is there is a claim. The insurer disclaims coverage before there is any lawsuit filed against the insurer. That's not different. Those are different. Distinguished. I understand. But if your honor is saying that upon the filing of a lawsuit, the insurer is entitled to notice. And if the insurer does not receive notice upon the filing of a lawsuit, then the estoppel doctrine and everything that the insurer had done beforehand doesn't apply. If that would, that would be the reasoning behind our ruling against us. Based upon the filing of the second lawsuit, right? But Davis and Pope say, no, they say once the insurer disclaims coverage, all it has is its argument that there's no possibility of coverage. But that was on the first lawsuit. But there was no lawsuit at the time of the disclaimer of coverage in Davis and Pope. And there was no lawsuit here. And the statute says it's a new action. You have to follow the statute. So there's nothing you can tell me a case. Those two cases can be distinguished. And they have distinguished whether you accept it or not. I know. I mean, I understand that. But you don't have to accept it. But they can be distinguished, not too difficultly distinguished. So what case? I mean, where is it? I mean, I searched the whole country to see if there's any case that would allow you. I couldn't find one. If there were a case more on point than Davis and Pope, I would have cited it, Your Honor. Well, I'm glad to know that my research turned out as much as yours. But that doesn't help you. Well, I don't think that the filing of any lawsuit causes a reboot of all of the insured obligations. But we have a statute. I have to follow the statute. The Supreme Court has talked about that statute, as we talked about over a dozen cases. And they all say the same thing. It's a new action. You have to have notice. It doesn't say that second part, though. Well, if it's a new action, the case law does, the cases do. Of course, yes, the statute does. The cases say that once a lawsuit is filed, the insurer must receive notice of the lawsuit. There has to be some kind of notice of that new case. In this case, they did not know about the lawsuit until three years later. It's been conceded. One of the facts of this case is there was no notice. Therefore, the statute applies and there hasn't been any notice. The statute that you're referring to does not state that the insurer is required to receive notice upon the filing of a new action. The policy and the law says they do. Well, I disagree because Davis and Pope say that once an insurer has made a disclaimer of coverage with respect to a claim, when there is a lawsuit- A claim. There was a first complaint. The second is a different complaint. It's got different facts, but as you mentioned in your introduction and your description of the important issues to you, you said it is a different claim. It's a completely different claim. I didn't say it was. No, no, no, no, no. But it is different. The defendants are different and you're coming from it, but now you're stepping in the shoes of Kirk. That is different than the original complaint. Now, the second complaint is also against Kirk. There was a judgment entered against Kirk in the second complaint. No, no, I understand. Go ahead. I'm sorry. I thought you were done just in time. No, no, go ahead. I'm confused. Go ahead. Okay. So I want to just get to a point because I think the point you're making, Mr. Guerlainere, is that your point is that it makes no difference whether we're talking about a claim or a lawsuit. Once an insurance company comes forward and says your claim is denied, because it's based upon their denying the claim, and whether they deny the claim based upon getting notice of the claim originally and saying, we deny your claim, and now this is the Davis and Pope case, we deny your claim, and then a lawsuit is subsequently filed, and the insured did not give notice to the insurer that this lawsuit, not a new lawsuit, the first lawsuit that had been filed, the court excused the notice provision based upon the fact that the insurer had already denied the claim, and that claim is no different from the case that's now before the court in a suit, correct? That's our position. And now the question becomes whether or not this case is different from Davis and Pope because what we have here is we have an actual lawsuit, a claim that's based upon a lawsuit, the lawsuit is forwarded to the insurance company, the insurance company denies the claim, closes out the claim, then a subsequent lawsuit is filed based upon the exact same issue, exact same occurrence, exact same incident, now is there something different that requires the insurance company to get notice when we've already, when this court has already said in Davis and Pope that that notice is not required, where the insurance company has already denied the claim? And I don't see why it should be treated any differently. And so now my question to you is, you're saying you don't see why it should be treated differently, let me ask you this question though, can you think of a reason why Mr. Novak is arguing that these two situations are different, and that the difference is, let's just be clear about that, the difference is that in Davis and Pope there was a claim filed with the insurance company, insurance company denied the claim, subsequently a lawsuit is filed, but this court said no notice is required because they've already denied the claim, now in the case that we have here, we have a lawsuit filed, lawsuit forwarded to the insurance company, insurance company denies the claim, lawsuit is subsequently dismissed, basically the same issues are refiled with the court, the same counts are refiled in a new lawsuit, your point is well what's the difference, can you think of any reason why Mr. Novak thinks that there's a difference between the lawsuit having been filed and the claim denied versus simply a claim being made with the insurance company and the claim denied, because at the next stage we have the same thing, we have that in both stages there was no notice when the second complaint was filed, and in this case in Davis and Pope when the actual complaint was filed, we know that there was no notice, but the issue is whether or not there's something different about a complaint being filed and a claim being denied versus a claim just simply being denied. I don't think so your honor, and I think your honor made it clear when your honor said that it's the same allegations of occurrence and the same allegations of property damage, so for purposes of the determination of whether or not there is a possibility of coverage under the policies, the allegations in both suits are the same, so if the insurer follows the same thinking process, once it makes its unilateral determination that there is no possibility for coverage, that's all that it's left to argue, and if we had more enhanced or narrower allegations of property damage and occurrence between the two lawsuits, or if it were a completely different underlying claim, that's the situation that I was hypothesizing with Justice Hyman earlier. I could understand a different outcome there, but that's not this record. On this record there's no difference between the on which the coverage determination must rest and the allegations of the new action that was filed. And you, so your position is that the second complaint that was filed in 2011 is identical to what was filed in 2009? No, it's not identical in its entirety. How is it different? Oh goodness, we had additional counts, there are, I believe, additional parties, but the allegations against Kirk that the association makes. I'm sorry, I didn't mean to cut you off, Mr. Governor, but I'm not concerned about the other parties. I'm concerned about the allegations against Kirk. How are those 2011 complaints different from the 2009? I don't think they are, I think they're all the same. Can I be asking Mr. Novak that same question? Well, I'm glad I have some five minutes on reply, because if he has a different thought, I'll come back and address that. Somewhere in this whole discussion, Justice Walker mentioned it, but we haven't really the first lawsuit was dismissed, was gone. So the insurance company's thinking, okay, gone, done and dusted, over. Then all of a sudden, a new lawsuit, a brand new lawsuit is filed. How is the insurance company supposed to know about that? If it had, well, as we say in our brief, if it had not issued a disclaimer of coverage, but had issued either... Excuse me, I'm talking about what the insurance company did. I'm talking about what the court did. The court dismissed this case, the first case. It was gone, gone. It was actually a voluntary dismissal. It was just, but the court signed the order dismissing it. Okay. So as far as the insurance company is concerned, it's gone. It's over. And then a new lawsuit, an entirely new lawsuit is filed. Same issues, but entirely new lawsuit is filed. Justice Hyman has already said, you have to give notice of a lawsuit. It's a new lawsuit. You have to give notice. I think Your Honor says, I disagree with the premise that Your Honor said that when the don't have to worry about this any longer. The insurer had issued its disclaimer of coverage months ago, and there's nothing in its claim notes files that shows any monitoring of the continued pendency of the first lawsuit after the insurer had disclaimed coverage. There's no fact in the record to support the premise that upon dismissal, the insurer then took any action that prejudices itself in any way. The insurer wrote off Kirk several months before the first lawsuit ever was voluntarily dismissed. So I think that really is the answer in the record that I hope addresses Your Honor's concern. Well, I'm going to ask you a question rather than making a statement here. Did the insurance company even know that the lawsuit had been dismissed? Probably not, because it walked away from Kirk. And if it had been monitoring Kirk's bankruptcy, it would have known about the approval of the lawsuit, the second lawsuit before the second lawsuit even was filed as we set forth in our- Let me just clarify something you say in your brief, because I don't know if that's correct. I'll be asking Mr. Novak the same question. But it appears that when the association submitted their claim to the insurance company, that the insurance company didn't even open a new claim number or a new file. Everything was still based upon the original claim. Is that correct? Yes. The claim file is in the record and we cite to it. And I don't think there's any dispute that the two lawsuits are for the same allegations of property damage. That's not what I'm asking you. That's not what I'm asking you about. I'm asking you about the claim numbers that the insurance company uses internally, which they disclose to their insured. Their insured would know what the claim number is. And when you make a claim with an insurance company, if you have a claim that you've made in 2009, we'll use the dates that we're involved with here. And then that issue, nothing happens with it. And then all of a sudden you're sued, say it's some kind of an injury case and you're sued exactly 22 months later within the two year statute of limitation. The insurance company generally would not open a new claim. And I'm taking judicial notice of that. I'm asking you, would they open a new claim in a situation like that? That's not something I could take judicial notice of. If it were, if it, if the insurer thought of it as a, as a different claim than it would, if the insurer thought of it as a continuation of the previous claim, then it would not. So this is what happened here. What happened? The insurer just continued, treated it as a continuation of the previous claim because it, it logged it under its, its previously existing claim file, which had lain dormant for several months because after the disclaimer of coverage issued, it didn't take any further action until the lawsuit was dismissed in 2010. And the new lawsuit was filed in 2011. Correct. And then they, they reacted to this new lawsuit with the same claim number. Yes. And at that point they basically took the position that we never received notice of this 2011 lawsuit. Correct. Your position is that, well, you didn't need notice based upon Davis and Pope because you already denied the claim. Yes. And I think more specifically. And I'll have this dialogue with Mr. Novak in a moment. More specifically, I think it's the material breach by the insurer excuses the insured from its notice obligations from, from, from its obligations under the policy, all that the insurer has left to it. Once it takes the position to disclaim coverage and not file for deck action and not defend under a reservation of rights is its determination that presumably led to it, to issue that disclaimer of coverage that there's no possibility of coverage under the policies. But for the reasons that we stayed in our briefs, there is a possibility of coverage under the policies here. So there should be a rule. And let's get into that a little bit, because that, that issue is important as we are discussing this. Tell us, tell the court why you believe that there's a possibility of coverage under the policy, because I'm sure Mr. Novak's argument is that there isn't. And that's why a staple is, is not going to be applied to the insurance. That definitely is going to be one of the arguments, but I think that like I said, you begin with the, there's no Supreme Court case that has a holding that says occurrence excludes the allegations here, or that property damage excludes the, the, the allegations here. There are some Illinois appellate court decisions. And I think that the circuit court felt constrained to follow them. Even the ones that were very overbroad, the insurer relies very, very heavily on the Metro Builders case in their brief, but Metro Builders was a collapsed wall. And I think Justice Ellison, the Metro Builders case may have been right, but for the wrong reasons. If the policy in Metro Builders had exactly the same language that we have here, which is standard form ISO forms, you would have as in property damage by implication occurrence, but then under J5, all harm to all construction that occurs during the course of construction is excluded from coverage. We're not saying under the majority rule or under these policies that all instances of construction defect are always covered. That's not our case. We don't need to make out that case. It's not the law in other states. It's not the, it's not the terms of these policies. What we are saying is that there are cases that deal with coverage parts and then exclusions, and then they extrapolate the purposes from their analysis of the coverage parts and the exclusions. And they say, well, you know, and when there were broader exclusions that excluded all of the work done either by an insured or on an insured's behalf, like the Henderson Law Review article that we talked about in our brief, even Professor Henderson concedes that there's an occurrence, but then there's no coverage because of an exclusion that exists, a broader exclusion than the ones that we have here that don't exclude completed work and subcontractors work. So, if you look at the reasoning in Broshue, you see that. In Metro Builders, I think the court could have just gone to J5 and said, this is a course of operations case. There's, as the Supreme Court did in Broshue, the broad initial coverage parts allow for coverage, but what the broad initial coverage parts give, the exclusions sometimes take away. And in Broshue, there was the broader, older exclusion that excluded all work done by the insured or on the insured's behalf. Here, because it's a newer policy, the exclusions are narrower. Not all work on the insured's behalf is excluded. Work done on the insured's behalf by subcontractors, when we're talking about completed operations, is not excluded under the terms of the policy. And that's our case here. So, when you look at Justice Burke's decision in Viking, when she says, faulty workmanship standing alone is the majority rule that there's no coverage. Well, that means a lot of different things. First of all, we're not talking about faulty workmanship standing alone or generally. We're talking about completed operations coverage and subcontractors work. And even the authorities that Justice Burke in her Viking decision relied upon talk about the possibility of coverage here. She cites to the Franco article from the Tort and Insurance Law Journal. And, you know, we point this out in our brief. The distinction, and this is from Franco himself, the distinction between J-5 and J-6 seems to be related to fortuity. This is at page 798 of the article. When the work is currently being performed by the contractor, it should be readily apparent whether the work is being performed appropriately. If the contractor fails to remedy faulty work, it clearly would comprise a business risk. In contrast, when the work is completed and accepted, but a latent defect later gives rise to a loss, there is clearly an element of fortuity that should be covered by insurance. And then again 799 and 800. I think I think you made your point. Why don't you finish up? Because I'm sorry, Your Honor. Well, I mean, we've I think that also we need to focus on the fact that, you know, once we're once we address ELCO, if we're successful in addressing ELCO to the panel satisfaction, and we move to the issue of whether there is a possibility of coverage, I think that we also need to focus on the fact that there are plenty of cases that go for us, some cases that go against us, even though some of those cases may be distinguishable. CMK is the case that doesn't involve a subcontractor. I think Stonebridge is probably the one appellate court case that I can't really distinguish, but I would just have to say is that themselves rely upon authorities that say coverage should be allowed here. So I think that second district decision is wrong. I think that the Illinois appellate court decisions that are either correctly decided, and contain faulty reasoning, because they go against the vast majority of cases, maybe we're binding on the circuit court. But here, I think that this panel has an opportunity to look to the policies, to look to the Supreme Court's reasoning and brochure, and apply what this panel believes is a correct decision in light of the coverage language and exclusions of this policy, the fact that we're talking about completed operations, and subcontractors work. And given the authorities in our favor, I think there's at least an ambiguity on that point. And once the ambiguity exists, as the court knows, it's resolved in favor of coverage. So on the issue of property damage, that's where you argue that there's coverage, correct? Well, there's both an occurrence and property damage. There's an occurrence because exposure to repeated conditions that cause property damage that's expected or intended from the standpoint of the insured, the Wilkin definition of occurrence. Okay, I understand. I understand totally. I understand, please. I want to get to my question, though. My question is, are these factual issues that you believe need to be resolved? As to whether or not there's actual, so it's clear that there's damage, there's no factual issue there. This is not a summary judgment case. This case, I'm sorry. It's summary judgment. This was a 2619, right? 26191. No, cross motions for summary judgment. Okay. All right. And it's based upon the allegations of the complaint. So you agree that there are no factual issues here that on the issue of whether or not there's coverage, you believe that that's strictly a legal issue that needs to be resolved by the court. Correct. Okay. And I hope Mr. Novak agrees with that as well, but we'll see. He moved for summary judgment. I'd be surprised to hear differently. All right. Hi, Mr. Novak. Thank you. I just want to start by saying when I was preparing for the argument and rereading the briefs after having a period of time apart, I was struck by how these briefs do not speak to each other. And I don't think this argument is going to speak to each other very well either. And I'll leave it to the justices here to ask the questions. Let me dispense with two quick little points. One has to do with the new file number that Justice Walker raised. If you look at the declaratory judgment action that was filed, exhibit B to that declaratory judgment action was the 2009 complaint, C39 in the record. We only knew, Harleysville only knew about the 2009 action. So of course, when it came in with a DJ with the 2009 action, which they did know about, where are they going to go with it other than go back to the 2009 action? They did not know about the 2011 action. So the answer to why the same file number is they didn't know any better at the time. Subsequently learned about it, Justice Paczynski asked the question about how are they supposed to know about the second lawsuit? Bowers Opera House tells us we don't have to go fishing and monitor subsequent filings against our insured. So once it's done, it's done. And that comes to Davis, by the way, I discount Davis. It's a 1980 case. It's before LaVorse Marine, which I think is important, Elko, which I think is important and Cincinnati companies. I think those are the three cases that control this Pope is interesting. And I'm going to come to Pope in a second, because even Pope didn't find collateral estoppel. There's a footnote. There's a footnote at page 25 of of the association's brief that says footnote to Pope noted that, quote, by not defending under a reservation of rights or filing a declaratory judgment action, economy risked being found in breach of its duty to defend, but found no potential coverage due to the lead paint exclusion in the policy risk being found in breach of its duty to defend. That's where Harleysville was when it denied and didn't file the DJ. And that's why Elko controls this case, because when you look at Elko, it says and we know what the general rule is when when the action is filed, if it's if there's a policy of insurance that contains a defense obligation, either defendant or under a reservation, or you can deny and file your DJ. If you don't do that, and if it's later determined that that denial was wrongful, that's when the problems occur. That's when you have the collateral estoppel and you can't raise your policy defenses. But it applies only where the insurer has breaches duty to defend. There's been no finding here of a of a duty to defend. The declaratory judgment court never got to it. Because what happened is the mashup of the 2009 and the 2011 pleadings, where all of us initially thought, well, what's what's going on as a judgment? What happened? What happened here? Because this case was voluntarily dismissed. When we saw the board of Roseland appellate court case where race judicata was found to bar the 2011 action. And so are they the same action? They are not according to the appellate court, because the 2011 action, the doctrine of race judicata applied. And the only reason why Kirk was able to continue in that is they consented to be sued. And they allowed the association to proceed to collect the insurance proceeds. Otherwise, we wouldn't be here at all. So in this particular case, what's important is there's been no finding that Harleysville wrongfully denied coverage. And secondly, also, according to Elko, there are certain circumstances where estoppel doesn't apply. And one is where the insurer is not given the opportunity to defend. And that's what what's happened here. Because without knowing about the second lawsuit, we didn't have the opportunity to defend Cincinnati company says you got to have actual notice. Lavorsi. We understand all of that. Mr. Novak, the question becomes you I know you said you want to ignore Davis for a minute. So I'll go along with you. And I like more Davis as well. And we'll just discuss hope. Hope was a 2002 case. I know you mentioned that Davis was a 1980 case. So 2022 years late later. So in Pope, though, the it was the same. It was very similar to Davis to the extent that the insurer denied the claim prior to the filing of a lawsuit. That's right. Subsequently, a lawsuit was filed and the insured did not give notice to the insurer. That's right. And the court found that they were still on the hook. Are you talking about Pope, Your Honor? I'm talking about Pope. No, no, Pope. Actually, Pope, actually, because there had not been a finding that that the denial was wrongful. Pope actually did say that the lead exclusion applied. So so it had the opportunity to evaluate the claim that was actually denied. And that's what's not happened here. There's this switch where we go from 2009 to 2011. And everybody's that's what I was kind of getting to with Mr. Guerrero when I misspoke and said this was a 2619. And I know this is is that there's there seems to be an issue that's not resolved here. And that is whether or not there is actual where whether or not this claim falls within coverage. I know the insurance company made a finding that it doesn't back in 2009, but they didn't defend and they didn't file a deck action. So that that issue hasn't been resolved in this case as to and let's just say that they were wrong in denying the 2009 action. So Elko would say you would be collaterally a stop from asserting your policy defenses in the 2009 action and a judgment that would have been entered in 2009. You're on the hook on that, but not the 2011 action. It is a new lawsuit, a new filing, a new claim number, a new a new summons, a new everything. So it's a new lawsuit, but it's no different than the other cases where it was a lawsuit, the first lawsuit after the claim had already been denied. So you have a situation where a claim has been denied. In both cases, the claims were denied. It's just that in this case, the claim was denied pursuant to a lawsuit that had been filed that they decided to respond to. But in the other cases in Pope and in Davis, the claim was still denied and then a lawsuit was subsequently filed and the insurance company didn't get notice. So and it's the same thing going on now is that sure, they denied the claim based on a lawsuit. A new lawsuit is filed. At that point, what does the insurer need to do is the question, is the insurer required to engage in a useless act, that useless act being come back to my insurance company on bended knees, saying, please, now I have another lawsuit based upon the same claim that you've already told me there's no coverage. You've denied it. Can you please take a look at this one? The exact same claim again. I'm asking you to take a look at this and see if you'll represent me on this one. I would respectfully disagree that it would be a useless. Which part do you disagree with? What did I say that you disagree with? That it would be a useless act to come back because, and if I may, because the policy, first of all, requires notice of the suit and the policy doesn't say anywhere, you know, if we if we deny this claim or this lawsuit, you don't ever again. No, no, no, no. The policy requires the policy. Well, I guess you're correct to some extent. The policy requires notice of any claim. A claim, even if there's not a suit, even if you don't believe there's going to be a suit, if there's a potential claim, you're supposed to give notice to your insurer. Right. Yes. Okay. Yes. So so that's what the policy requires. Yes. And Cincinnati. Yeah. And Cincinnati Company says of a lawsuit and LaVorse Marine says of a lawsuit and Elko for the collateral estoppel doctrine says you got to have notice of the lawsuit as well. So it's not a question of a useless act because you don't look at whether it's the same claim. You look at the allegations and a single word could make a difference. For example, the association in their brief on page two of their brief, there's a typo. I'll admit it's a typo. But they say on page two of their brief, they say the association filed its action against the defendant, including Kirk, alleging work performed by Kirk subcontractors led to water infiltration and caused physical injury to the condominium and to interior furnishings of the condominium units. The actual allegation is interior finishings. And we say that's part of the part of the project. But if it would have been one word interior furnishings, we needed to look at that. And that would to me as a coverage lawyer, that would have made a difference because I'd say, oh, interior furnishings, that can't be part of the project that's different interior finishings based on the purchase agreement here. That's part of the contract or negligence or whatever. They're all the same claims. But litigants and particularly judgment creditors of bankrupt insurers repeatedly amend their pleadings to plead into coverage. It's just a fact of life. And we get time after time after time, people saying, here's our fourth amended complaint. Here's our fifth amended complaint. Take a look. Are you guys going to come to the table? Because everybody wants the insurer at the table. I don't know what happened here. But nobody wanted to ensure this question. Why did the association send the complaint? We only needed actual notice. We could have gotten it from anybody. My grandmother could have sent it to me. I mean, I'm the association. So is there Do you know why? I do not. I'm not talking to you right now, Mr. Gordo. It's not your turn. I'm asking Mr. Novak if he knows of any reason why. I don't I think I think they should have because it was the same set of the DJ, the lawsuits, multiple lawsuits from day one. Why they didn't send us the second the 2011 complaint. I don't know. I can speculate. I will tell you that that's been a concern for me as I go through this case. I think this is a close case. And I don't know where this case lands. But that is a concern for me as to why the association didn't send the complaint. And as you said, your grandmother could have sent it to anyone. It doesn't require that they've been short to give the notice. That's correct. No tender. It doesn't have to be a tender that's gone. It's actual notice. Tell us that there's a lawsuit that's out there. Tell us where to find it. Give us the opportunity to defend or not. And again, as Elko says that this is what your options are. And but there's still that second problem about even if there was a mistake made in not filing a DJ with the 2009 action, you still have to have a leap beyond Elko, beyond Cincinnati Companies, beyond LaVorse Marine to say, well, why would that result in an estoppel of Harleysville for any defenses that might have to the 2011 action, which was a new lawsuit based on 13 to 17, Einer versus Tiernan and the Richter case. It's a new lawsuit. So again, understand whether anybody thinks it's a futile act. The law says you've got to give notice and we didn't get notice. And if we would have looked at it, maybe new eyes would have said we should file a DJ. Who knows? We don't know. But we didn't get that notice and we should have gotten the notice. So to us, this is I guess the issue is still, though, Mr. Novak, is whether or not the fact that they did send the original complaint out in the claim was already denied. Does this now make this case more like Davis and Pope's, which simply doesn't require you to give notice again? You've already given notice of the claim and they denied the claim because either way, it's just notice of the it's notice of the claim, whether you give notice of the claim when the claim first occurs or whether you give notice of the claim when the lawsuit is filed. Either way, the insurance company has notice and they're in a position to defend. But again, it's a it's a new lawsuit, as Mr. Gallinari said, there were many more. I understand what you're going back to the same argument. That's that's that's what we're talking about. If you look at if you look at Davis, for example, there was no lawsuit. So it's no lawsuit is just like the new lawsuit that you have no knowledge of. Either way, it's a new lawsuit, a new lawsuit filed in Davis, which they didn't give notice to the insurance company, new as in new being the first lawsuit. Right. And now we have new as in the second lawsuit being filed without giving notice to the insurance company. Under Davis, they're saying that notice is not required because the insurance company has already denied the claim. And I would submit that LaVorse Marine says you got to give us reasonable notice. And I don't think anybody would say no notice. And we have no instruction from our Supreme Court on this issue. We have these are both appellate court decisions, correct? Are you talking about Pope and Davis? I'm talking about all the cases we're talking about right now. What is the Supreme Court address the issue of whether or not once a claim is filed, you still have to continue to give notice? I think so. I think that Cincinnati companies, again, have a lawsuit of a lawsuit. And again, you're following a continuum of what identical claim was that was denied. And of course, the policy says you have to give notice of the occurrence or of a claim or of a suit. So there's multiple obligations under the policy that say you have to give notice. That's a separate question from what the law says. The law says you've got to give notice of the lawsuit. And it was a new lawsuit in 2011, and we didn't get notice. So we have to give notice. But again, there's case law that says you don't have to give notice where you've already informed the insurance company that there is a claim and they've already denied the claim. There's nothing you need to do further. That's Davis on all fours. I understand. But again, that was decided well before what I think the controlling precedent is by the Supreme Court under Cincinnati companies in Lavorsi, Marine and Elko. I think those are the controlling authorities, not the Davis appellate decision. Again, it hasn't been expressly overruled to my knowledge, but I don't think it has to be. I think the law is clear about what a notice has to be given for a lawsuit. Even if it's a related action, you still have to give notice. And as I said before, carriers get notice all the time from all sources, from everybody. So why notice wasn't given? And there should not be an assumption that there would be a denial because it's like, oh, look, we've already looked at this once. Why are we going to look at it again? We always look. Coverage lawyers always look. If there's an amended pleading, if there's a new pleading, you always look. That's your obligation. I didn't know that. Yes. Yeah. So you always look. We didn't have the opportunity to look. And that's at the core of this, the failure to give notice. This is not an expanded insurance coverage case. This is a notice case, a no notice case. And that's where we say that the trial court was correct. The trial court didn't even consider either of the allegations of 2009 or 2011 because the judge said operative pleading is 2011. You guys didn't see that. No notice. Fundamental prerequisite to coverage, give actual notice. Your argument is it's a very simple case. It's a very simple case. Yes. Under Illinois Supreme Court, just in any case, you have to have actual notice. There was no actual notice. Case closed. I mean, that's it. We see it that way. Yeah. So, okay. I don't know if my time is up, but there may be one other point I wanted to make. I don't. No, I think I'm fine. I'm happy to listen to Mr. Gallinari's rebuttal. Thank you for your time. Thank you. Go ahead, Mr. Gallinari. Thank you very much, Your Honor. Mr. Gallinari, with the Illinois Supreme Court case, why don't you start there? Well, none of them address what we are talking about here, where the insurer already had materially breached the policies in question by issuing a disclaimer of coverage when there was a possibility of coverage and not hiring the defense counsel. It doesn't have to because the case was dismissed voluntarily. So, what does it mean under the statute when a case is dismissed voluntarily? What's that mean? It means that the case can be reinstated within a year or a new action is filed under the statute within a year, but the insurer has already breached. Wait a minute, but a voluntary dismissal under section 21009 terminates the entire action. The action is over. Okay. And at that point in time, the insurer remains in breach. But then we talked about before 13-217, the Supreme Court has said over and over, it's a new and separate action. You want to have it be related by claim or some other way that somehow the first complaint and the second complaint are related so that you can piggyback on the first complaint because there's no notice in the second. The statutes themselves... There's nothing that... It's a separate claim. So, the Supreme Court has said actual notice of a lawsuit is a prerequisite to the duty to defend. And that's not... In any of those cases, it was not the situation where the insurer was already in material breach of its insurance contract. It doesn't matter because it's a separate lawsuit. The question is, you have to take it as it's given. And in this case, it's a separate lawsuit. If we find it's not a separate lawsuit, I could agree with you. But if it's a separate lawsuit, how do we not find it's a separate lawsuit? It's a new action. It's a new action. It's a new action. It's a separately numbered action, but it contains the same... It doesn't matter. Well, I think it does because Mr. Novak... Let's go to a point that Mr. Novak was making in his argument. He pointed out a typographical error in my brief, and I apologize for the error. But what he said was, the second time around, you will want to go through and see if there any allegation, any allegation that is different the second time around that increases the possibility for coverage so that the insurer can make an informed decision the second time around without being prejudiced. He's not able to point to any such allegation in this record. Mr. Conner, how could they go through the second complaint to see if there's anything new added to it or different added to it if they don't know there's a second complaint? I understand that. I agree, Your Honor. But I'm talking about now, the argument now, the arguments in the brief, the arguments this afternoon. There's nothing from the insurer saying, because of this new allegation in 2011, and that was not included in 2009, we would have acted differently. We were unfairly prejudiced. There's none of that. It's conceded on the record. It's conceded in the briefs and in argument this afternoon that the allegations of occurrence and property damage are the same. It's conceded that there was no deck action or defense under a reservation of rights. That gives for nine months. It all goes back to what Mr. Novak said, that you were talking past each other. And that's what we're faced with. We're faced with two ways to look at this case. And we'll agree with one of you. But that's, I mean, I think we understand you're coming from a different angle. And you reject what Mr. Novak said, and he rejects what you've said. He also says that the policies require that notice to be sent. That's one of the things that he said during his argument. But under ELCO, when you don't do what you're supposed to do with respect to the 2009 action, all that you are entitled to rely upon thereafter is your argument that there's no possibility of coverage. You already stopped from making that argument that the policy requires notice to be sent. And we argue even in the case of a new action, because the insured is not required to engage in what you're talking about. And you're talking about Pope and David. So yeah, okay. So this whole case will resolve around how we read Pope and David. That's what you're saying. That's true. I think that's true. Okay. And I would point out one other thing. Mr. Novak correctly points out that our footnote in the Pope case, we are arguing that this case should be treated the same as Pope, where what the court did in Pope, it noted that even though the insurer had disclaimed coverage before any lawsuit was filed against its insured, none of the estoppel arguments matter if there's no possibility for coverage under the claim, which is why our brief has two parts. We start with the estoppel arguments. We make the estoppel arguments. And then we concede that even if we're right on estoppel, if we're wrong on no possibility of coverage, like in Pope, we lose on that point also, which is why we emphasize that also here, unlike the facts in that case, there is a possibility of coverage here. So thank you very much for your time. Thank you. Thank both of you for your arguments this well done. And you've given us two very clear pictures to look at and decide between. So I appreciate that very much. You're not making things for us. Both are excellent. So please, both of you have a good afternoon and we'll take the case on their advice.